B. C. Evans v. Duanna Welborn et al.

No. 2666.

**1. Resulting Trust.**—When land is purchased with money the separate property of the wife, and the deed taken in her name, a resulting trust is thereby created in her favor which can not be defeated by the levy of an attachment in a proceeding against her husband, or by any other proceeding except a sale by the husband to an innocent purchaser for value.

**2. Innocent Purchaser.**—An attaching creditor who purchased land under judgment foreclosing the attachment lien, paying therefor five dollars, the land being worth two thousand dollars, can not be held to be a purchaser for value.

**3. Lis Pendens.**—One who purchases land after the institution of suit by another to recover it, and during its pendency, is charged with notice of every fact that affects injuriously his vendor's title; as a purchaser *pendente lite* he can make no defense which the vendor can not interpose.

**4. Fraud.**—When a conveyance is made by husband and wife of property presumed to be community property, but which in equity is the wife's separate estate, though the conveyance be colorable and designed to protect it from the husband's creditors, they can not attack it as fraudulent.

Appeal from Tarrant.   Tried below before Hon. R. E. Beckham.
The opinion states the case.

*A. M. Carter*, for appellant. — 1.   The undisputed proof made by plaintiffs was that their title came from Thomas W. Welborn by deed dated after bringing of this suit; that plaintiffs had conveyed the land to T. W. Welborn "just to cover it from the creditors of William Welborn," and the court should have given the jury the instruction asked by defendants and intervenor.   Wait on Fraud. Con., sec. 402; Glenn v. Mathews, 44 Texas, 400; Fuller v. Dame, 18 Pick., 472; Rice v. Wood, 113 Mass., 133; Spink v. Davis, 32 Miss., 152; Jackson v. Ludeling, 21 Wall., 616; Oscanyon v. Arms Co., 103 U. S., 261; Foote v. Emerson, 10 Vt., 338; Guernsey v. Cook, 120 Mass., 501; Noel v. Drake, 28 Kans., 265; Woodruff v. Wentworth, 133 Mass., 309; Foolers v. McDonald, 54 Cal., 98; Willis & Bros. v. Morris, 63 Texas, 460.

2.   The court erred in the last paragraph of his charge to the jury in instructing the jury that the deed from plaintiff to Thomas Welborn did not divest the plaintiff of her title, and that it required a delivery of the deed from Thomas W. Welborn to Hannah Bartlett in order to divest plaintiff of her title to the land in controversy, instead of instructing the jury that the plaintiff's own deed to Thomas Welborn divested her of all title in the land, and that it was immaterial whether Bartlett's was ever delivered to her or not, so far as plaintiff was concerned.

3.   The court erred in the fourth paragraph of the main charge wherein he instructed the jury as follows:   "You are instructed that, though you may believe from the evidence that said land was the separate property of Duanna Welborn, yet the apparent title being in the community, if the in-

tervenor Evans purchased the same for a valuable consideration at the sale made under the judgment mentioned in plaintiff's petition, without any notice that said Duanna Welborn then claimed the same as her separate property, such purchase would vest title in Evans superior to plaintiff's, and you should so find for him, unless you further believe from the evidence that the circumstances under which the sale was made were calculated to prevent and did prevent the property from bringing its value, and that the price paid was inadequate, in which event such sale would not be sufficient to divest the plaintiff of any title she had, if any.  But mere inadequacy of price unaccompanied by any circumstance which would tend to prevent a fair sale would not authorize the setting aside a sale otherwise valid."

*W. C. Pendleton* and *Bowlin & Bowlin*, for appellees.—1. If the land in controversy was purchased with the proceeds of the separate property of the appellee Duanna Welborn; or if her husband W. J. Welborn was indebted to her in the sum of $1000 or more, and in good faith, intending to pay the debt, gave her the $1000 with which he afterwards purchased for her the said land; or if he had used a farm belonging to her in securing his own debts, under agreement with her that he would replace it with other land in case the farm should be lost by reason of the mortgage, and after finding that he could not redeem the farm, in good faith bought the land in controversy for her to replace her farm so mortgaged, she consenting to so accept the same—in either event the land sued for became the separate property of the wife, Duanna Welborn. McKamey v. Thorp, 61 Texas, 648; Cox v. Miller, 54 Texas, 16; Greenleve, Block & Co. v. Blum, 59 Texas, 124; Lewy v. Fischl, 65 Texas, 311; 2 Ct. App. C. C., 506, 507; Ross v. Kornrumpf, 64 Texas, 390; Morrison & Hart v. Clark, 55 Texas, 437.

2. It could have been no fraud upon W. J. Welborn's creditors for him to convey the land of his wife to any person, no matter what his intent may have been, such property not being subject to the payment of his debts. Wood v. Chambers, 20 Texas, 247; Beard v. Blum, 64 Texas, 59; Scheuber v. Ballow, 64 Texas, 166.

3. T. W. Welborn's deed never having been delivered to Bartlett could not sustain intervenor's title.  Dikes v. Miller, 24 Texas, 417; Dikes v. Miller, 25 Texas Supp., 281; Tuttle v. Turner, 28 Texas, 759; 2 Lomax Dig., pp. 29, 30.

4. If by the conveyances and notes of the transfer by W. J. and Duanna Welborn to T. W. Welborn he was to hold the land for her benefit and sell it for her under her instructions, and was to pay nothing upon the notes, then as between Duanna Welborn and T. W. Welborn his authority was no more than that of an attorney in fact, and she held the equitable title, which she had the right to convert into the legal title by

suit or otherwise.    Miller v. Alexander, 8 Texas, 36; 3 Wait's Act. and Def., p. 33.

5.  If by virtue of the deed and notes of the sale to T. W. Welborn the superior title remained in Duanna Welborn she had the right to protect such title by suit.

HENRY, ASSOCIATE JUSTICE.—This suit was instituted on the 30th day of November, 1883, by Duanna Welborn, joined by her husband, William Welborn, against Thomas W. Welborn and Hannah and Byron Bartlett, to recover a tract of land alleged to be the separate property of said Duanna.

On the 4th day of June, 1884, B. C. Evans intervened in the cause, asserting title in himself to the land.

The record shows that William Welborn, the husband of Duanna Welborn, had made use of and lost in his business certain separate property of his wife, and that to reimburse her he invested the proceeds of other separate property belonging to her, and some money that he had borrowed for that purpose, in the land in controversy, taking the deed in her name.    The record shows that the money before it was paid for the land had been given to and was in the possession of the wife.    The deed to the wife contained nothing showing that the land was paid for with the separate money of the wife or that it was intended to make it her separate property.

William Welborn, the husband, being insolvent, he, joined by his wife, deeded the land to Thomas Welborn, his brother, who gave his notes for the purchase money.    It is clearly proved that this conveyance was made for the sole purpose of preventing the creditors of William Welborn from subjecting the land to the payment of their demands, and that it was the intention of the parties that the notes of Thomas Welborn should not be collected and that he should hold the land in trust for Duanna Welborn and sell it for her benefit.    The deed to Thomas Welborn was made on the 27th of February, 1883.

William Welborn was indebted to Evans & Martin, and they having sued on their debt caused an original attachment to be levied on the land on the 1st day of March, 1883, as the property of said William Welborn.

Judgment was rendered in the suit foreclosing the attachment lien, and the land was purchased under the order of sale issued on said judgment by B. C. Evans, one of the plaintiffs in the judgment, who paid for it five dollars.

Thomas Welborn conveyed the land to Hannah Bartlett by deed dated March 1, 1883.    Bartlett was to pay thirteen hundred dollars for the land, but before paying she required the notes given by Thomas Welborn to be surrendered.    Accordingly, these notes were endorsed by Duanna Welborn and delivered to Thomas Welborn to enable him to perfect the

sale of the land to Bartlett, but during the interval required to execute this purpose the attachment of Martin & Evans was levied on the land, whereupon Bartlett refused to pay the purchase money.

The evidence is quite conflicting as to whether the deed from Thomas Welborn to Hannah Bartlett was ever delivered. It was left at the office of the county clerk either as an escrow or to be recorded. In fact, it was promptly recorded and delivered by the county clerk to Bartlett.

Though the consideration was to be paid in cash by Hannah Bartlett, no part of it has ever been paid, but on the 1st day of May, 1884, she deeded the land to B. C. Evans for the consideration of two hundred dollars paid her by him.

The land is proved to have been worth two thousand dollars or more. The trial resulted in a verdict and judgment for plaintiffs, to reverse which the intervenor, B. C. Evans, prosecutes this appeal.

There can be no controversy about the sufficiency of the evidence to show that William Welborn had become indebted to his wife Duanna Welborn by appropriating the proceeeds of her separate property, and that before the purchase of the land in controversy he had paid to her a sum of money, to belong to her separately, and to be used by her in the purchase of land, to be likewise held as her separate property.

When the land in controversy was conveyed to her the money so held by her paid the consideration. The deed failing to show that the money paid for the land belonged to her separate estate or that it was intended to make the land her separate property, it was liable to be seized and sold by her husband's creditors so as to vest title in a purchaser who-paid a valuable consideration without notice of her equitable right before the date of his purchase.

The land having been paid for with money that had been paid into her hands and made her separate property before it was invested in the land created a resulting trust in her favor, which, it has frequently been held by this court, could not be defeated by the levy of an attachment or any proceeding short of a sale of the land to an innocent purchaser for value. Stoker v. Bailey & Goodjohn, 62 Texas, 299.

If it be true that the intervenor had no notice of the wife's equity, it still must be held that the payment of the paltry sum of five dollars, at a sale made under his own judgment, can not be held to entitle him to protection as a purchaser for value.

Whatever may be the fact about the delivery of the deed from Thomas Welborn to Bartlett, it is an undisputed fact that the terms of the sale were that the consideration was to be paid in cash. Without that the sale was incomplete. The purchaser declined to pay the money or complete the trade, and it was a palpable fraud for her to take advantage of an apparent delivery of the deed and sell and convey the land to Evans. He testified that he purchased without notice of the non-delivery of the

deed, if in fact it was not delivered. But he purchased after plaintiff had instituted this suit against his vendor for the land and during its. pendency, and he stands charged with knowledge of everything that injuriously affects his vendor's title. As a purchaser *pendente lite* he can make no defense that his vendor can not make.

The land having been at the time of its conveyance by William and. Duanna Welborn to Thomas Welborn the separate property of the wife, it was not liable for the husband's debts, and .therefore no kind of con-- veyance or disposition of it could have had the effect to defraud his. creditors. The fact that the fears of the parties were excited and that. they were willing to convey it fraudulently, if that was necessary to pro-- tect it, or that if it had been the husband's property they would have committed a fraud by conveying it to avoid the payment of his debts,. does not change or affect the rule.

The land being in equity the wife's separate property there was noth-- ing improper in its being conveyed by her and her husband to Thomas. Welborn in trust, to be held and disposed of for the benefit of the wife. The property having been intentionally or otherwise diverted from the purposes of the trust, it became the wife's right to sue for and recover the property.

We have carefully examined all of appellant's assignments of error, and without referring to them in detail we conclude that they show no error for which the judgment ought to be reversed, and it is therefore. affirmed.

*Affirmed.*

Delivered October 18, 1889.