HOME INV. CO. et al. v. STRANGE.

(Court of Civil Appeals of Texas. San Antonio. Dec. 4, 1912. Rehearing Denied Jan. 8, 1913.)

1. TRUSTS (§ 102*)—"CONSTRUCTIVE TRUSTS" —PERSONS IN CONFIDENTIAL RELATIONS.

When a trustee or person clothed with a fiduciary character takes advantage of the relation and acquires the title or use of trust property, or makes a profit or advantage to himself out of the trust and confidence, a constructive trust is impressed on the property, profits, or proceeds in his hands in favor of the original beneficiary.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 153; Dec. Dig. § 102.*

For other definitions, see Words and Phrases, vol. 2, pp. 1476–1479; vol. 8, p. 7614.]

2. TRUSTS (§ 95*)—CONSTRUCTIVE TRUST— FRAUD OR OTHER WRONG.

When the legal title to property is obtained through actual fraud, misrepresentations, concealment, undue influence, or duress, or by taking advantage of one's weakness or necessities, or through other similar means, or under other similar circumstances, rendering it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, a constructive trust is impressed on the property in the hands of the original wrongdoer or any subsequent holder not a purchaser in good faith and without notice, in favor of the one truly and equitably entitled thereto, although he may never have had any legal estate therein.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 145–147; Dec. Dig. § 95.*]

3. CORPORATIONS (§ 519*)—EVIDENCE—SUFFICIENCY.

In trespass to try title against an attorney employed to clear up the title for plaintiff's benefit, who acquired outstanding titles for his own benefit and the benefit of a corporation absolutely controlled by him, and which constituted merely a medium for his operations, where there was sufficient evidence as against the attorney, the court properly refused to direct a verdict for the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2085, 2088, 2089, 2091, 2093; Dec. Dig. § 519.*]

4. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—STATEMENTS.

An assignment of error complaining of the denial of a special charge should not be considered where such charge is not copied in the statement thereunder.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

5. JUDGMENT (§ 251*) — REIMBURSEMENTS — NECESSITY OF PLEADING.

In trespass to try title against an attorney employed to clear up the title, who acquired title for his own benefit and the benefit of a corporation controlled by him, defendants were not entitled to reimbursement for moneys expended by them, where a claim therefor was not set up in their answers.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 389, 390; Dec. Dig. § 251.*]

6. TRUSTS (§ 374*)—ENFORCEMENT—RELIEF.

Where an attorney employed to clear up the title to land acquired outstanding titles for his own benefit and the benefit of a corporation controlled by him, and used as a medium for his operations, the corporation's right to reimbursement for moneys expended by it depended on the same rules governing the attorney's right to reimbursement.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 607–612; Dec. Dig. § 374.*]

7. TRUSTS (§ 361*)—BREACH OF TRUST—REIMBURSEMENT.

Where an attorney employed to clear up the title to land expended money to acquire outstanding titles with the intention and design of depriving his client of the land, and vesting title thereto in a corporation controlled by him, he was not entitled to reimbursement as a condition to the recovery of such titles by his client.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 556–559; Dec. Dig. § 361.*]

8. JUDGMENT (§ 253*)—RECOVERY—PLEADING.

In trespass to try title against an attorney employed to clear up title, who had acquired outstanding titles for his own benefit, the petition alleging that, if it should appear on the trial that defendant had disposed of the land, plaintiff would then elect as to each lot whether he would have judgment for the lot or its value, and that each of such lots during all of the time involved had been worth more than a thousand dollars, was sufficient to justify a recovery for the value of the lots sold by defendant.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 392; Dec. Dig. § 253.*]

9. LIMITATION OF ACTIONS (§ 180*)—PLEADING—RAISING DEFENSE BY DEMURRER.

When it is sought to set up limitations by special exception, it must appear from the face of the petition that the action is barred.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 670–675, 681; Dec. Dig. § 180.*]

10. LIMITATION OF ACTIONS (§ 103*)—ACCRUAL OF CAUSE OF ACTION — REPUDIATION OF TRUST.

Limitations will not run in favor of a trustee against his beneficiary, until there is some manifestation of a hostile purpose by the trustee, notice of which is brought home to the beneficiary.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 500, 506–510; Dec. Dig. § 103.*]

11. ATTORNEY AND CLIENT (§ 129*)—BREACH OF TRUST—LIABILITY.

An attorney who, in violation of his duty to his client, acquired title to real estate, and subsequently sold it, was liable to the client for its value.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 284–291; Dec. Dig. § 129.*]

12. ATTORNEY AND CLIENT (§ 72*)—EMPLOYMENT—EVIDENCE—SUFFICIENCY.

In trespass to try title against an attorney alleged to have been employed to clear up the title to land and to have acquired outstanding titles for his own benefit, evidence held to justify the submission of the question of employment.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 102–104; Dec. Dig. § 72.*]

13. TRUSTS (§ 373*)—ENFORCEMENT—SUBMISSION OF SPECIAL ISSUES.

In trespass to try title against an attorney employed to clear up the title to land, who acquired outstanding titles for his own benefit and that of a corporation controlled by him, the submission of the special issue as to whether any money was paid by him or the corporation for plaintiff's benefit and not solely for their own benefit was proper, as bearing on the question of reimbursement.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 604–606; Dec. Dig. § 373.*]

**14. APPEAL AND ERROR (§ 742*) — ASSIGNMENTS OF ERROR—STATEMENTS.**

Assignments of error not followed by such statements as are contemplated by the rules will be overruled.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

**15. LIS PENDENS (§ 26*)—BONA FIDE PURCHASERS—PURCHASE PENDING ACTION.**

A person paying money on land after the institution of a suit to recover it from his grantor was not to that extent an innocent purchaser.

[Ed. Note.—For other cases, see Lis Pendens, Cent. Dig. §§ 58–62; Dec. Dig. § 26.*]

**16. EVIDENCE (§ 110*)—HEARSAY—LETTERS.**

Letters passing between parties having no connection with a suit are inadmissible in evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 230–246; Dec. Dig. § 110.*]

**17. APPEAL AND ERROR (§ 742*) — ASSIGNMENTS OF ERROR—REQUISITES.**

Assignments of error which are very general, involve several propositions, and are not followed by propositions or statements, will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

**18. ATTORNEY AND CLIENT (§ 125*)—ATTORNEY'S DUTIES.**

The law will strictly enforce the obligations of an attorney to his client, and require from the attorney the strictest devotion to the service of the client, and not tolerate any use of the relation to obtain advantages antagonistic to the interests of the client.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 250–263; Dec. Dig. § 125.*]

**19. APPEAL AND ERROR (§ 713*)—TRANSCRIPT—ABANDONED PLEADINGS.**

Abandoned petitions superseded by amended petitions which are copied into the transcript on appeal in violation of rule 13 of the district and county courts (142 S. W. xviii) will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2379, 2463, 2645, 2956, 2957; Dec. Dig. § 713.*]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Trespass to try title by H. B. Strange against the Home Investment Company and others. From the judgment, defendants appeal. Affirmed.

W. J. Moroney, N. L. Lindsley, and Leake & Henry, all of Dallas, for appellants. L. C. McBride, of Dallas, for appellee.

FLY, C. J. This suit was tried upon a fifth amended petition, in which appellee sued the Home Investment Company, W. J. Moroney, Emma G. Kendall, and W. B. Kendall, representing that the Investment Company "is a corporation duly incorporated, or, if not duly incorporated, pretending to be so." The suit is a statutory action of trespass to try title to lots 1 to 18, inclusive, Huffman's subdivision, of lots 1 and 4, block A., Bowser & Lemon's Oak Lawn addition to the city of Dallas, followed by allegations that Moroney, a practicing attorney at law, was employed by appellee to perfect appellee's title to the lands described, and to clear appellee's title, and acquire for him all outstanding titles, but Moroney, "instead of representing plaintiff's interests as aforesaid, has in truth and in fact undertaken to 'clear' plaintiff's title in such manner as to acquire the benefits for himself, the said Moroney, or for the benefit of the defendant corporation, the Home Investment Company, the said outstanding titles to said lands," and the manner in which this was attempted is set out in detail. It was alleged that deeds were obtained to the lands from different parties, and that nothing was paid for them; that, while the deeds were executed to the corporation, they were for the benefit of Moroney, who was "the dominating spirit and factor of said corporation, dictating its entire policy and transactions." It was averred that Kendall and wife were asserting some right to the land. A personal judgment was asked against Moroney. The Investment Company disclaimed any right, title, or interest in lots 1, 2, 9, 10, and 11, demurred to the petition, pleaded not guilty, and stale demand, and limitations of two years. Moroney filed a disclaimer as to all the lots, demurred to the claim for a personal judgment against him, and pleaded two years' limitation. Kendall and wife disclaimed as to all the land except lots 17 and 18, and adopted the answer of the corporation.

The cause was submitted to the jury on the following issues, which were answered as indicated:

"(1) Did the defendant Moroney agree or undertake to represent plaintiff as attorney, and to endeavor to clear or acquire for plaintiff title to the lands in controversy?" Answer: "Yes."

"(2) Did the defendant Moroney, for himself or Home Investment Company (and which), pay out, in connection with said lands, any money with the object and purpose upon his part of benefiting the plaintiff, wholly or partially, and not with the sole object and purpose of benefiting himself or Home Investment Company? If he did so, then state the amount. If not, simply say so by the answer, 'No.' In answering this question, consider only such expenditures, if any, as were shown by the evidence to have been reasonably necessary and reasonable in amount." Answer: "No."

"(3) What is the reasonable market value now of lots 3 to 8, inclusive, and lots 12 to 18, inclusive, involved? State separately the present value of each lot." Answer: "Lot 3, $1100.00. Lot 4, $1100.00. Lot 5, $1100.00. Lot 6, $1100.00. Lot 7, $1100.00. Lot 8, $1100.00. Lot 12, $800.00. Lot 13, $400.00. Lot 14, $400.00. Lot 15, $400.00. Lot 16, $400.00. Lot 17, $1000.00. Lot 18, $1000.00." Upon those answers the court rendered judgment that appellee recover of appellants lots 1, 2, 9, 10, 11, 12, 13, 14, 15,

16, 17, and 18 in Huffman's subdivision as described hereinbefore, the recovery of the two lots last named being conditioned on the payment of $438, with 6 per cent. interest from date of judgment, to Mrs. Emma G. Kendall; that appellee recover of Moroney and the corporation the sum of $6,600, said sum being the value of lots 3 to 8, inclusive, said amount being in lieu of said lots; that Kendall and wife recover their costs from appellee, and appellee recover his costs from Moroney and the corporation.

[1, 2] As peculiarly appropriate to the facts and issues fully developed in the course of this opinion, we quote the following from Pomeroy's Equity Jurisprudence, § 1052: "The doctrine may be stated in its most general form that whenever a trustee or person clothed with any fiduciary character takes advantage of the relation, and by means of it acquires the title or use of the trust property, or makes a profit or advantage to himself out of the trust and confidence, then a constructive trust is impressed upon such property, profits, or proceeds in his hands in favor of the original beneficiary." And, as bearing upon the contention that it was not shown that appellee had a legal title to the land, we adopt the following language from the same author (section 1053): "In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein; and a court of equity has jurisdiction to reach the property either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust." Keeping in view these cardinal principles which prevail in courts where conscience is enthroned and justice, right, and fair dealing are strictly enforced, we proceed to the consideration of the issues arising in this case, under the facts as disclosed by the record, and as presented by the different assignments found in the brief of appellants.

[3] The first assignment of error assails the action of the court in refusing to direct the jury to return a verdict for the Home Investment Company, except as to lots concerning which there was a disclaimer by such corporation. The evidence clearly showed that Moroney had absolute control of the corporation in all of its dealings, and to all intents and purposes was the corporation. He has been its president since its creation. He, under a resolution passed by the board of directors, was given "full authority to buy and sell and handle the affairs of the company." He absolutely controlled the corporation, although he stated that "in the main" he owned only one share of stock. He received its money and paid it out on his individual check. The corporation in its corporate capacity had no bank account, because, as stated by its president, "it was not an active corporation." The testimony justifies the conclusion that it was used merely as a medium of operation for its president. It was his instrument, and was operated for his benefit. In the propositions under the assignment, this fact seems to be assumed, for matters relating to the corporation are mentioned only once, while those relating to the attorney and president are related five or six times. It follows that, if there was evidence binding the attorney, there was evidence binding his instrument, the corporation, which was not active except as an adjunct to the activity of the president.

[4] The assignment should not be considered because its complaint is that a special charge was requested and denied, and yet the charge is not copied in the statement, which covers 60 pages or more of the brief.

[5] The second assignment of error assails the action of the court "in failing and refusing to make any allowance for moneys expended by the Home Investment Company for purchase price of the property, fencing, taxes, abstracts of title, recording fees, and other proper and necessary expenses as shown by the evidence." The statement contains no reference to any pleading upon which the recovery sought could be based, and a reference to the answers of the corporation and W. J. Moroney, which this court might have refused to make, discloses that no claim was made in such answers for reimbursement of the amounts set forth in the assignment of error. Those matters were equities which should have been pleaded in order to have been recovered. It was alleged in the petition that no sums were really paid out by the Investment Company on the land, but appellants failed to set up and claim any sums expended by them, and there is no basis for a recovery of any disbursements made by them. Lippincott v. Taylor, 135 S. W. 1070.

[6, 7] In this case the facts indicating that the corporation was a mere tool in the hands of its president, the acts of one were the acts of the other, and the same rules as to reimbursement of money, under the circumstances of this case, would apply to both. Those rules are clearly set forth by this court in the case of Henyan v. Trevino, 137 S. W. 458, and approved by the Supreme Court of Texas. The following vigorous language was used by Justice Neill, who wrote the learned

and well-considered opinion in that case: "The uncontroverted evidence shows that, while he occupied the relation of attorney towards appellees, in his endeavor to overreach and defraud them of their interest in the land which it was his sacred duty to protect, he paid the taxes, not for them, but sought, through the medium of such payment, to acquire title to all their interest in the land, and to hold it adversely to them. Convicted of this fraud by the verdict of the jury, he now says to a court of justice: 'You erred in not compelling my clients to pay me money which I used in my effort to defraud them out of the interest in property which it was my duty as their attorney to protect them in.' Courts of conscience will do no such thing."

In this case there was testimony which tended to show that Moroney, an attorney at law, was employed by appellee to clear up his title to the land in controversy; that, when he obtained deeds to the land, he represented that he was acting for appellee; that the moneys expended by him were paid out with the fixed intention and design of depriving his client of the land and vesting the title to it in his instrument, the corporation, which "was not an active corporation," but was used to further the ends of its president. The moneys were not expended for appellee, but for Moroney and his corporation.

Appellants attack the decision in Henyan v. Trevino as being not only in opposition to and inconsistent with the universal rule, but as being inconsistent in its different parts, and Thomas v. Morrison, 92 Tex. 329, 48 S. W. 500, Douglass v. Blount, 95 Tex. 369, 67 S. W. 484, 58 L. R. A. 699, and Beall v. Chatham, 100 Tex. 371, 99 S. W. 1116, are cited as sustaining their contention. A brief review of them will show that they are not in conflict with the case of Henyan v. Trevino. In Douglass v. Blount it was held that an attorney could with propriety buy for himself the property of a defendant at a judicial or execution sale under process controlled by him as counsel for the plaintiff. That does not touch the facts of the Henyan Case or this case. In the case of Thomas v. Morrison it was held that a client, whose attorney bought at sheriff's sale, without his authority, a title adverse to the client, would have the right to treat the purchase as one made for their joint benefit. That opinion does not hold that an attorney can buy the land about which he has been employed by his client, with the intention of defrauding the client of his rights, and demand repayment of the money used to further the fraud. In the case of Beall v. Chatham the Douglass v. Blount Case was followed, but it was further stated that the relation of attorney and client did not exist between the parties. There is not one word in the decision which is in conflict with the later opinion of Henyan v. Trevino, and neither have we seen

any decision in conflict therewith. To hold as contended by appellants would be to put a premium upon the unfaithfulness and disloyalty of an attorney to his client. Language cited as inconsistent with that quoted herein from Henyan v. Trevino was not used by this court, but was taken from the judgment of the district court, of which no complaint was made, and which was not passed upon by this court.

[8] The corporation and Moroney had sold a number of the lots and received the purchase money for them, and the court rendered a judgment against those appellants for the amount received for the lots, and it is the contention of such appellants that the pleadings were not sufficient to sustain that part of the judgment, because the allegations are vague, indefinite, and uncertain, and because the claim for money was barred by two years' limitation. The allegations in the petition are: "That if it should appear on the trial hereof that either or both of said named defendants so holding said lands in trust for plaintiff have disposed of said lands, or any portion of same, or undertaken so to do, then plaintiff will elect upon the trial hereof as to each of said lots whether he shall have judgment for the specific lot or its value; and in this connection plaintiff shows that at all times since, to wit, January 1, 1906, each of said lots has been of value more than one thousand dollars ($1,000), and is at present of value more than that sum." Neither of the objections to the allegations can be sustained. The allegations are not vague, uncertain, or indefinite, and the claim was not barred by limitations.

[9] The pleadings do not show upon their face that more than two years had elapsed since notice of the repudiation of the trust came to appellee, nor do they show that more than two years had elapsed since the lots had been sold by Moroney. The pleadings are to be tested by the allegations therein. Whenever it is sought to set up limitation by special exception, it must appear from the face of the petition that the action is barred. Rucker v. Dailey, 66 Tex. 284, 1 S. W. 316; Stapper v. Wolter, 85 S. W. 850. As said in the Rucker-Dailey Case: "The defendant has the affirmative on this issue, and he must sustain it by showing conclusively, from the plaintiff's pleadings, that the suit was not commenced in time." There is nothing in the pleadings indicating when the trust was repudiated.

[10] In order to start the statute of limitation in case of a trust, there must be some manifestation of a hostile purpose upon the part of the trustee, notice of which must be brought home to the beneficiary. Wilson v. Simpson, 80 Tex. 279, 16 S. W. 40. The amended petition did not set up a new cause of action. The original suit was to establish a trust and the cause of action set out in the amended petition, upon which the cause was tried, was to establish the same trust.

152 S.W.—33

The pleading in the alternative for the purchase money of land sold by the trustee was definite, clear, and proper. Mixon v. Miles, 46 S. W. 105; Id., 92 Tex. 318, 47 S. W. 966.

[11] Speaking on the question of the right of a beneficiary in a trust to recover the value of real estate wrongfully and fraudulently acquired and sold by a trustee, the Supreme Court of North Dakota quoted with approval the following from Long v. Fox, 100 Ill. 43: "No rule of law is better settled than that where a trustee wrongfully converts to his own use the trust property, or any part of it, the cestui que trust is entitled in equity to a personal decree for the value of the property so converted." In the case of Silliman v. Gano, 90 Tex. 637, 39 S. W. 559, 40 S. W. 391, it was said: "We are of opinion, therefore, that, when the trustee betrays his trust by a sale of the property, the beneficiary can hold him responsible for its value, although he may, if he so elect, be enabled to proceed against the purchaser for the property sold." To the same effect are Boothe v. Fiest, 80 Tex. 141, 15 S. W. 799, and Loomis v. Satterthwaite, 25 S. W. 68. Appellants attempt to raise other objections to pleadings under their third assignment of error, but none can be entertained except those set out in paragraph 6 of their answer, which have been considered and discussed.

The fourth assignment complains of the overruling of a general demurrer, which alleges that so much of the petition as claims a personal judgment against Moroney is not sufficient, and is overruled on the grounds set forth in the consideration of the third assignment of error. The same may be said of the fifth assignment, which seeks to present the issue of limitations.

The sixth assignment of error is fully disposed of in considering other assignments, and is overruled. Appellant Moroney was not found personally liable as president of the corporation, but as the trusted attorney of appellee, who had employed him to clear the title to certain lands, and who did clear it for his own use and benefit.

[12] The case was based upon the fact that Moroney was employed as an attorney or agent to represent appellee, and it was essential that the issue of employment should be determined by the jury, as was required in the first special issue submitted by the court. Appellee swore that he employed Moroney to "straighten" out the title to the land. Again he said: "Mr. Moroney and I did not, when I engaged him to represent me in clearing up this title, go to McCormick's office and go over the papers." Appellee agreed to pay Moroney "whatever your charges may be, what you think are just and reasonable." He told Moroney all about the papers connected with his title, and the facts communicated were used by the attorney in securing title to himself or his corporation. Moroney told J. M. McCor-

mick, Mrs. Cornelius, J. R. Haynes, and perhaps others that he was representing appellee in connection with the land. Moroney admitted that appellee came to his office, and did talk about the land or a part of it, and suggested that the attorney visit "various and sundry parties for further information about it." He denied that he was employed, but indicated that he undertook to perform the service "without one cent of compensation." When appellee in September, 1906, wrote Moroney, and told him, "I only wish to ask what progress have you made and what is the present status of my Oak Lawn matters," Moroney did not say that appellee had not employed him, but merely indicated that he had found other parties, "and, the proposition belongs to them." This was the first information received by appellee that his attorney was no longer representing him, but had taken up "other parties." The issue should have been submitted, and there was ample testimony to sustain the response of the jury. The seventh and eighth assignments of error are therefore overruled. The authorities cited by appellants are not in point.

[13] The second special issue was properly submitted, and the ninth assignment of error is overruled. It was necessary to ascertain whether appellant Moroney and the corporation had expended the money in the prosecution of a design to defeat the claims of appellee to the land, or in furtherance of his claim to the land. The determination of that issue bore on the question of whether there should be reimbursement for such expenditures.

The tenth and eleventh assignments of error are overruled. Both have very meager statements, and the propositions are extremely general. The tenth assignment is fully disposed of in the discussion of other assignments, and the issue asked to be submitted and refused, which refusal is complained of in the eleventh assignment of error, has no evidence to support it. Appellants make no effort to point out any such testimony. Appellant Moroney swore that appellee did not employ him to perform any service as an attorney.

[14] The twelfth, thirteenth, fourteenth, fifteenth, and sixteenth assignments of error are not followed by such statements as are contemplated in the rules for briefing, and are overruled.

The seventeenth assignment of error is not followed by a statement showing what was contained in the special charge. Nor does the statement relate facts that would constitute Kendall an innocent purchaser for value; in fact, there is no mention in the statement of any definite sum having been paid by Kendall and wife. Appellee claimed a legal title to the land as well as any equities obtained by his attorney Moroney.

[15] Appellee was required to pay all sums paid on the land by Kendall prior to the institution of the suit, of which the latter had notice. He also recovered interest and taxes, being all to which he was entitled. One who pays money on land after the institution of a suit to recover it is to that extent not an innocent purchaser. Evans v. Wellborn, 74 Tex. 530, 12 S. W. 230, 15 Am. St. Rep. 858.

[16] There is no merit in the nineteenth assignment of error, and that, as well as the twentieth assignment, is overruled. The letters were inadmissible, having passed between parties having no connection with the suit. They have no bearing on the issues in the case.

[17] The twenty-first assignment will not be considered. It is very general, involves several propositions, and is not followed by propositions or statement.

[18] The legal title to the land was in appellee, and all clouds upon it could have been removed by his attorney with the same efforts that were used by him to place the title in the Home Investment Company. Even on his own showing W. J. Moroney occupied such confidential relations with appellee as to demand the utmost good faith and loyalty to his interests. Appellee testified that Moroney was his attorney, and there are facts and circumstances which corroborate his testimony. The law will enforce to the letter the obligations arising from the fiduciary relations between attorney and client, and require at the hands of the former the strictest devotion to the service of the client, and will not tolerate any use of such relation to obtain advantages antagonistic to the interests of the client. With the facts we have no concern except to ascertain that they sustain the verdict, as they do in this case.

The question of reimbursement of the corporation, which was under the absolute control of Moroney, should not arise in this case, because Moroney made the disbursements out of his money, and he alone has any cause of complaint, and he is deprived of complaint because of the disbursements having been made in furtherance of a fraud upon his client. Appellants Moroney and the corporation were out nothing on expenses, because they had realized more than had been expended. The expenses were not pleaded by appellants and without such pleading they had no right to recover any expenditures, even though they had been paid out for a legitimate purpose. Nueces Valley Irr. Co. v. Davis, 116 S. W. 633. In this case, however, the attorney and corporation had no equities, because equities never arise from fraudulent conduct. The paramount duty of the attorney was to have the land conveyed to his client whose interests he had been employed to conserve and protect, and he clearly is not entitled to be reimbursed for expenditures while actively engaged in trampling upon his obligations to the client.

[19] The abandoned pleadings of appellee are often referred to in the brief of appellants, but they were not introduced in evidence by appellants, and, of course, do not appear in the statement of facts. The abandoned petitions are copied into the transcript in violation of rule 13 of the district and county courts (142 S. W. xviii). Clapp v. Engledow, 82 Tex. 290, 18 S. W. 146. They will not be considered for any purpose whatever.

The judgment is affirmed.