## No. 5774.

## W. F. Mills *v.* Wade Brown et al.

1. Homestead.—To obtain one hundred and sixty acres of land as a preemption, it must be settled upon and occupied by a family. When the family has for its head a husband and wife, the right to the land results from their joint settlement and labor, and is community property.

2. Same—Pre-emption.—The fact that settlement upon public land was made by a woman and her husband, after the wife had, from her own means, and before marriage, paid the surveyor's fees, will not deprive the property of its community character, when the husband and wife resided on the land in compliance with law until the title issued.

3. Same.—The law does not contemplate that a survey shall be made of a pre emption, or an application therefor filed, until the pre-emptors have actually settled on the land. The payment of the surveying fees and the survey must enure to the benefit of the family. The issuance of patent to the heirs of one spouse can not defeat the community rights of the other.

Error from Shelby. Tried below before the Hon. J. G. Hazelwood.

*E. B. Wheeler* and *Drury Field,* for plaintiff in error.

No briefs for defendants in error have reached the Reporter.

Willie, Chief Justice. The appellees brought this action of trespass to try title against W. F. Mills, to recover one hundred

and sixty acres of land lying in Shelby county. The defendant pleaded not guilty, suggested improvements in good faith, and set up title under one Yarborough to an undivided one-half interest in the land, and asked judgment therefor and for partition.

The judge, to whom the cause was submitted upon the law and facts, rendered judgment for the plaintiffs for a recovery of the land, subject to an interest for Yarborough's life in one-third thereof, which he decreed to Mills, and ordered partition accordingly. From this judgment the defendant below appealed to this court.

The land was patented to the heirs of Mary Roberts, deceased, and the appellees were heirs and representatives of heirs of said deceased. Mary Roberts whilst a widow with three children, appellees in this cause, applied for a pre-emption of the land in controversy; paid the surveying fees, amounting to eight dollars, then married Yarborough and thus moved upon the land, where they continued to reside together until her death, and he remained there until some time afterwards, when he sold out his interest in the premises to the appellant and moved away. There was some conflict in the evidence as to who paid the file and surveying fees, but the court below having found that these were paid with the separate means of Mary Roberts, and the testimony being sufficient to warrant that finding, the case must be treated upon the theory that it was correct. As to the fact at the time Mary Roberts first moved upon the land she was the wife of Yarborough, and he the head of the family, of which she was a member there was no dispute. It was also shown that they had agreed to marry before she made a file upon the land, and that the file was made for the purpose of getting them a home after they should marry, and at that time there were no improvements upon it, and that all these were made after they settled upon the land.

It is very clear, too, that the land was granted by the State as a pre-emption homestead, and the right to it acquired by reason of a compliance with the prerequisites prescribed by the statutes of our State. In every homestead pre-emption law which has existed in Texas, it has been made a prerequisite to the grant that an actual settlement and improvement of the land granted should have taken place. These laws have been enacted to bring about a settlement of the public lands and to provide homes for those who might be without them. Hence lands are given as homesteads to actual settlers only; and it is only upon condition

that they have been so occupied that an application for survey can be granted and a patent thereafter issue to the claimant. The proceedings contemplated by law to take place are, first, an actual settlement upon the land; then an application for survey; then a survey and return of field notes by the proper officer; all this to be followed by a continued residence upon the land for a given time, with an improvement of the same; and thereafter a patent issues to the claimant. (Acts of 1870, p. 68; Acts 1871, p. 16; Acts 1873, p. 101; Rev. Stats., art. 3937, et seq.)

Settlement upon the land is the first step toward obtaining title, and without it no application for a survey of the land can be granted. To obtain one hundred and sixty acres the settlement must be made by a family; and when the family has for its head a husband and wife, the right to the land is acquired by their joint settlement, it is the product of their joint efforts and labor, and hence the community property of the marriage. The same rule obtains as in the case of headright certificates granted to a party by reason of his being a married man. The wife is regarded as contributing equally with the husband to the acquisition of the land, and it is held to be the property of the marital partnership.

To ascertain, therefore, the status of the property in controversy, we must find out by whom the first actual settlement upon it was made, of what the family consisted who first occupied the land, and in whose behalf an application could thereafter be made for a homestead pre-emption. The evidence upon that point is clear and undisputed; the settlement was made by Yarborough and his wife, formerly Mary Roberts, and her children by a former marriage. This initial and absolutely essential step was the joint enterprise of husband and wife, the occupation was continued by them jointly so long as the wife lived, and by the husband till the title matured. Considered in reference to this state of facts alone, there can not be a shadow of a doubt that the husband had the same interest in the land as that held by the wife or her heirs, and that it was community estate.

We are of opinion that the facts that Yarborough's wife had, before marriage, filed a preemption claim to the land, and paid the surveying fees out of her own money, do not affect the right of her husband to a community interest in the homestead pre-emption. The law, as we have seen, does not contemplate that a survey shall be made or an application therefor filed until the pre-emptors have actually settled upon the land. Such acts must

necessarily enure to the benefit of the family who make the first settlement, and no steps taken previous to that time by any member thereof for the benefit of any portion of the family and the exclusion of the remainder, can defeat the object of the law, which is to give to actual settlers a home upon land previously occupied by them.

The law declares that the family that settles upon the land must have it surveyed, and if a husband and wife are at the head of the family, and the land has not been assigned, the title must issue for the benefit of them or their heirs, at the end of three years of occupation. Yet the appellees contended that Mary Roberts, on the eve of marriage and before moving upon the land, and with the intent that her future husband should, with her and her children, make the first settlement thereon, could defeat the right which the law accorded him by reason of such settlement, by doing an act wholly unauthorized by law. To state this proposition is to show that it has no foundation upon which to rest. Nor could the payment of the surveyor's fees out of her separate money change the status of the title. The land was not acquired through this payment, but through the joint effort of her husband and herself in settling upon the land and improving it. These fees were not in contemplation of law due until after the settlement was made. They were mere advancement by the wife to pay a debt of the community, without the payment of which their title to the property could not be perfected. She thereby became a creditor of the community to the extent of the money advanced, and her claim a charge upon the property saved to the marital partnership. The amount advanced was eight dollars, one-half of which was due from her community interest in the land. The issuance of the patent to the heirs of Mary Roberts did not, of course, deprive Yarborrough of his interest in the land; for property conveyed to either husband or wife enures to their common benefit, if acquired by their common labor or money.

From these views the inevitable conclusion is that Yarborough, at the date or his conveyance to Mills, owned an undivided one-half interest in the land in controversy and the improvements thereon, and to that extent the appellant received a good title from him. That the appellees were therefore entitled to recover of him, only an undivided one-half interest in the property, it being all that they inherited from their mother; and one-half of the money advanced by her to pay the file and

surveying fees upon the pre-emption claim. The finding of the court below was not in accordance with these views, and the judgment must accordingly be reversed. It will be here rendered so far as to decree that the appellees recover of the appellant an undivided interest in the land in controversy and the improvements thereon and four dollars in money and the cause will be remanded to the court below with instructions to cause partition to be made between the appellant and the appellees in accordance with this decree, making the four dollars a charge upon the half awarded to the appellant, to be enforced in manner provided by law.

*Reversed and remanded.*

Opinion delivered December 6, 1887.