Opinion delivered April 10, 1888.

---

## No. 5959.

### ULLMANN, LEWIS & CO. *v.* A. J. JASPER ET AL. ·

1. **PAROL EVIDENCE—DEED.**—It is competent to show by parol evidence that at the time when a deed was made, which on its face was an absolute conveyance of property occupied as a homestead, it was agreed that if the vendee was afterwards released from a replevy bond of the vendor on which he was surety he would convey back the land. The sufficiency of such evidence to establish such agreement is for the jury. Its legal effect (if established) as constituting an attempted mortgage of the homestead should be given in charge by the court. See opinion for reference to defective charges given and refused.

2. SEPARATE PROPERTY.—A wife contracted to purchase for herself prop-
erty, partly on credit, consisting of two lots. The wife had a separate
estate; the husband had no property, and the note of the husband was
taken for the deferred payment, though neither the vendor nor the wife
expected payment to be made by the husband. The cash payment was
made from the wife's separate property, and was applied to one lot·
The defered payment was also made of the wife's separate means, and
completed the payment for it. The deed was made to the separate use
of the wife and retained a vendor's lien on the lot not paid for. Held
that, in the absence of fraud or collusion, there was nothing in the
purchase contravening either the law or public policy and which would
make the property purchased community property.

APPEAL from Montague. Tried below before the Hon. F. E.
Piner.

This appeal involves ownership of lots 20, 21 and 62 in town
of Hillsboro. The parties, W. H. and Damaris Grant, were
married January 29, 1883. At their marriage the husband had
but little property. The wife owned several tracts of land.
The lands were quickly sold. With about five hundred dollars
of the wife's money Grant bought a stock of groceries from
plaintiffs, paying half cash and balance on credit. The business
was carried on in the husband's name. The money realized
from sales was deposited in bank to his own account, as was
the money he received from the sale of his wife's lands. The
common fund was used to support the family, and was drawn
upon to keep up the stock. After being in business about three
months Grant bought lots 20 and 21, taking deed to himself,
the deed reciting a cash payment of two hundred and fifty-
eight dollars and fifty cents, and the assuming by Grant of a
note of one hundred and fifty-five dollars. In his testimony
Grant stated these payments were made in some way out of
his wife's money. Grant and wife used these lots as a home-
stead, their dwelling being on lot 21; stables, etc., on lot 20.
The lots were inclosed together and without partition.

November 9, 1883, Grant's stock of goods was seized under
attachment sued out by Ullmann, Lewis & Co. On the day
the attachment was levied Grant, by arrangement with Cox &
Bell, obtained their names as surety to his replevy bond, and
thereby received possession of his stock, Grant and wife exe-
cuting to them deed for the homestead in consideration of their
note for eight hundred dollars retaining vendor's lien and bear-
ing ten per cent interest. At this time Grant and wife resided

on lots 21 and 20. At the time, it seems to have been understood that if Cox & Bell should be released from the replevy bond, they would deed the property back, the purchase money note remaining in the hands of one McKinnon as security for Cox & Bell. January 1, 1884, Grant and wife moved to Hillsboro and took charge of a rented hotel, leaving a part of their household goods. Cox & Bell never took possession. January 29, 1884, they conveyed the lots to Mrs. Damaris Grant in consideration of the cancelation by W. H. Grant of their purchase money note. March 1, 1884, Ullmann, Lewis & Co. recovered judgment against the firm of which W. H. Grant was partner. An abstract of the judgment was filed with the county clerk and was recorded April 7, 1884. On April 7, Grant placed lumber on lot 20 for a tenant house, which was soon thereafter erected, and was occupied by a tenant. In May, 1884, Grant and wife returned to their residence, and thereafter occupied the dwelling on lot 21 and stables, etc., on lot 20, as before their removal. April 9, 1884, Grant, for his wife, bought lots 61 and 62, which lie three or four hundred yards from his residence. They were unimproved. Grant, not having money enough of his wife's funds to pay for both lots, and wishing to incumber one to raise funds for building purposes, paid one hundred and twenty-five dollars, the full price for lot 61, and executed his own note for one hundred dollars, the purchase money for lot 62, the vendor refusing to take the wife's note. The deed was to the separate use of Mrs. Grant, and retained the vendor's lien upon the lot not paid for.

July 16, 1884, Grant and wife conveyed the entire property, lots twenty, twenty-one, sixty-one and sixty-two, to defendant Jasper, in consideration, in part, of other lands which were conveyed to Mrs. Grant's separate use. In August, 1884, plaintiff caused an execution to be levied upon the lots, and the first Tuesday in September, 1884, the lots were sold under execution, the plaintiffs becoming the purchasers. They sue for the lots, claiming under their judgment lien, fixed April 7, and sale in September.

The defendant Jasper made Grant and wife parties. The pleadings set up in defense that the lots twenty, twenty-one and sixty-two were the separate property of Mrs. Grant, and homestead rights. On the trial there was testimony tending to show that the lots twenty and twenty-one were paid for out

of the separate property of the wife. The transaction of the purchase of lot sixty-two, as given above, was proved.

*B. D. Tarlton*, on his proposition attacking the charge of the court, cited: Heidenheimer Bros. v. McKeen, 63 Texas, 229; Braden v. Gose, 57 Texas, 40; DeBlane v. Lynch, 23 Texas, 25.

There being evidence to show that, on November 9, 1883, W. H. Grant and Damaris Grant sold and conveyed lots Nos. 20 and 21, in controversy in this suit, in consideration of a note executed by Cox & Bell to W. H. Grant for eight hundred dollars, such sale and conveyance (if the jury believed the said note to have been the consideration) would constitute an abandonment by said Grant and wife of any homestead claim by them to one or both of said lots; and there being evidence to show further that, on the twenty-ninth day of January, 1884, Cox & Bell conveyed said lots to Damaris Grant in consideration of the cancelation by W. H. Grant of their said note to him, such conveyance would presumably invest the community of Grant and wife with title to said lots. And the plaintiffs having fixed their judgment lien on said lots April 7, 1884, at a time when the same were not occupied or used by said Grant and wife as a homestead, it follows that the lots became subject to execution against W. H. Grant. (Cox v. Miller, 54 Texas, 16; Edmonson v. Blessing, 42 Texas, 596; Blessing v. Edmonson, 49 Texas, 333; Gage v. Neblett, 57 Texas, 375.)

The court erred in the portion of its charge which reads: "You are further instructed that if, under the instructions herein given, you find from the evidence that Mrs. Damaris Grant inherited from her father's estate certain lands, and that the same were sold to W. H. Grant, and that the money, or a part of said money, was used in the purchase and payment of the land described in the plaintiff's petition, then, in case you so believe from the evidence before you, you will find for defendants, and will so say by your verdict." (Love v. Robertson, 7 Texas, 6; Claiborne v. Tanner, 18 Texas, 69; John v. Battle, 58 Texas, 593; H. & T. C. Railway Co. v. Rider, 62 Texas, 270.)

The court erred in that portion of its charge which reads: "You are instructed that the instrument executed by Grant and wife to Cox & Bell was a mortgage and void as to any homestead rights Damaris Grant may have had in the property so conveyed." Said instrument purports to be an absolute con-

veyance in consideration of eight hundred dollars paid in a promissory note. Any inquiry into the intention of the parties to show that said instrument was of a character different from what it purports to be, would be within the exclusive province of the jury, and such intention would become a question of fact for the jury to pass upon. The court by this charge removed said question from their consideration and assumed their functions. (Horne v. Puckett, 22 Texas, 201; Stephens v. Sherrod, 6 Texas, 293; Gibbs v. Penny, 43 Texas, 563; Ruffier v. Womack, 32 Texas, 332; Hudson v. Wilkinson, 45 Texas, 445; Hilliard on Mort., ch. 5, sec. 3; Alstin v. Cundiff, 52 Texas, 453; Carter v. Carter, 5 Texas, 100.)

*W. L. Booth, S. C. Upshaw* and *Abbott & Ivey*, for appellee: The deed from Mrs. Craig per her agent, C. T. Booth, to Damaris Grant, of date April 9, 1884, it being for her sole use and behoof, conveyed an absolute estate in lots 61 and 62 to her, as against all the world except Mrs. Craig. (Baker v. Baker, 55 Texas, 577; McKamey v. Thorp, 61 Texas, 64; Ross v. Kornrumpf, 64 Texas, 390.)

The abstract of appellant's judgment was not indexed and registered in such a manner as to fix a judgment lien. (Rev. Civ. Stats., arts. 3157, 3158; Lee v. O'Brien, 54 Texas, 635; Ferguson v. Ashbell et al., 53 Texas, 245; Pool v. Sanford et al., 52 Texas, 621; Odum v. Loomis, 1 Ct. App., Civil Cases, sec. 524; Heath v. Fraley, 50 Texas, 209; Norvell v. Garthwait, 25 Texas, 583; Dikes v. Monroe, 15 Texas, 236.)

WALKER, ASSOCIATE JUSTICE. It is unnecessary to notice the numerous assignments of error relating to the claim to the lots twenty and twenty-one, as the separate property of Mrs. Grant. A careful examination of the record shows that the trial judge was sufficiently careful in the admission of testimony and that the burden by the law upon the wife of proving satisfactorily that her separate funds were used in the purchase, was presented in the charge. Some slight errors, resulting, perhaps, from oversight, appear, which will readily be corrected on another trial.

The transaction of November 9, as detailed by the witnesses, in addition to the written instruments then made, was properly admitted in evidence. It was competent to show the attendant circumstances and the more extended agreement of which

the deed and note were parts. The sufficiency of the parol testimony to establish such further agreement controling the deed was for the jury. It was not competent for the court to determine that the parol testimony had established the more extended agreement, and to charge, as legal effect of it, that the transaction was an attempted mortgage on the homestead.

The court charged the jury "that the instrument executed by Grant and wife to Cox & Bell, was a mortgage and void as to any homestead rights the wife may have had in the property so conveyed," and "that if you believe that at the time of the recording of the judgment in the office of the county clerk of Hill county, W. H. Grant and his wife had been occupying and using the property, or any part of the same * * for the purposes of a homestead, then you will find for defendants such property, if any so used and claimed by them as their homestead."

On the legal effect of the deed to Cox & Bell taken in connection with the subsequent acts of the parties, the plaintiff asked the following charge:

"If you believe from the evidence in this case, that on the ninth day of November, 1883, W. H. Grant and Damaris Grant conveyed to Cox & Bell the lots numbers twenty and twenty-one, in controversy in this suit, in consideration of a note executed by Cox & Bell to W. H. Grant for eight hundred dollars, then you are instructed that said conveyance constituted an abandonment by said Grant and wife of any homestead claim by them to one or both of said lots, for the purpose of the suit; and if you further believe that, on the twenty-ninth day of January, 1884, said Cox & Bell conveyed said lots to Damaris Grant in consideration of the cancelation by W. H. Grant of their said note to him, said property would, by said conveyance, presumably become the community property of W. H. and Damaris Grant; and if you further believe that, on the seventh day of April, 1884, the plaintiffs herein fixed a judgment lein on the real estate of W. H. Grant, and if you further believe that, on the said seventh day of April, 1884, said W. H. Grant and Damaris Grant were not living on said lots, or either of them occupying the same as a homestead, then you are instructed that the same would be subject to the execution of any judgment against W. H. Grant."

These charges, those given and that refused, are alike faulty. The charges as given, assumed as proven, the state of facts

affecting the deed of Cox & Bell, while that refused entirely ignored the testimony to the explanation of the purpose of the deed. It was the duty of the court to submit to the jury the testimony to the alleged arrangement by Grant with Cox & Bell, by which, if proven, the deed in legal effect became a mortgage, with instruction as to the effect such facts, if found, would have upon the status of the property as the homestead of Grant and wife; and on the other hand, if the jury should ignore the other or further facts beyond the written instruments executed, then the legal effect of the written instruments upon the rights of the parties should have been given.

It does not appear in the record that lot sixty-two ever was used as part of the homestead. Upon such state of facts the charge upon the homestead rights should have been limited to lots twenty and twenty-one. It seems that these lots were fenced by a common inclosure, and were used together as a residence—the dwelling on lot twenty-one, the stables, etc., on lot twenty. From this it would appear that the temporary occupation of the house erected on lot twenty could in no way affect the rights of the parties if homestead rights had attached to any part of the inclosure. (68 Texas, 455, Newton v. Calhoun.'

The transaction by which Mrs. Grant obtained the deeds to lots sixty-one and sixty-two does not necessarily make lot number sixty-two community property. The wife had funds, the husband had none. She wished to buy the lots and contracted for them partly on credit. For convenience the cash payment was applied to one, and the other was bought wholly on credit. It is shown that the note of the husband was not relied upon, neither she nor the vendor expecting payment to be made by him. If such was found to have been the contract, in absence of any fraud or collusion, there is nothing in it contrary to any rule of law or of public policy. If, in fact, the purchase was by her the deed took effect in conveying the lots to her separate estate.

A question is raised in the record which may affect the rights of the parties. It seems that "the index" of the records of judgment liens was objected to because "the name of each plaintiff and of each defendant in the judgment," etc., did not appear on the index, as required in fixing judgment liens. (Rev. Stats., arts. 3158, 3159.) This is not necessary to be passed upon in this case, but it is remarked that where a rule

is given by act of the Legislature, courts are not at liberty to disregard it, or to attempt to avoid its effects, when applied to a state of facts contemplated by it.

For the error in the charge of the court, as above stated, the judgment below is reversed and the cause remanded.

*Reversed and remanded.*