C. A. McCLINTIC v. MIDLAND GROCERY & DRY GOODS COMPANY.

No. 2297. Decided April 2, 1913.

### 1.—Community Property—Wife's Separate Estate.

Land purchased from the State by a married woman living with her husband is prima facie community property. But the presumption that it is so may be rebutted, and is overcome by proof that it was paid for by her separate means, such as property acquired by gift; and its status as community or separate estate is determined by the character of the right by which the title had its inception. (P. 36.)

### 2.—Same—Case Stated.

Her husband being an invalid and the wife under necessity of supporting him, she acquired a home on school land purchased from the State in her name and paid for with money given her by her brother. She then applied for and purchased from the State an additional section of school land, the property here in controversy. By agreement between the husband, her brother, and herself, the purchase was made in her name and the land was to be her separate property, the brother undertaking, as before, to furnish the money for payment, and doing so as to the payments made, though as to deferred payments due the State her husband joined her in executing notes. The necessary residence on the home section being completed, the wife, joined by her husband, conveyed both sections to a purchaser. A judgment creditor of the husband had, before such sale, filed an abstract of same and fixed a lien therefor on the

last section purchased, if same constituted community property; and he brought action to foreclose. Held that the additional section so acquired was separate property of the wife, and not subject to the judgment lien. (Pp. 34-37.)

3.—Same.

The land being acquired for the purpose of making it the wife's separate property, paid for in part and expected to be wholly with her separate means acquired by gift, the presumption that it was community property was rebutted; and this though the husband joined in executing the notes for deferred payments. (P. 37.)

Error to the Court of Civil Appeals, Second District, in an appeal from Midland County.

The Midland Grocery & Dry Goods Company sued McClintic for foreclosure of a judgment lien on land. It had judgment, which was affirmed on appeal by defendant, and he obtained writ of error.

*Caldwell & Whitaker,* for plaintiff in error.—Where the wife purchases land, paying the cash consideration out of her own separate estate and executes her notes and obligations for the balance of the consideration, with the understanding between her and her husband that the property is purchased for her own separate use and that the deferred payments are to be met out of her own separate estate, the property so acquired becomes her separate property, even though she be joined in the obligation for the deferred payments with her husband. Presidio Mining Co. v. Bullis, 68 Texas, 581; Texarkana Nat'l Bank v. Hall, 30 S. W., 74; Parker v. Fogarty, 4 Texas Civ. App., 615; Sparks v. Taylor, 99 Texas, 411; Kamey v. Thorp, 61 Texas, 650; Hatchett v. Connor, 30 Texas, 111.

The fact that the occupancy of the land was to be completed by J. C. Skeen and Mrs. M. E. Skeen, husband and wife, does not change its status as her separate property, if it was originally taken up for her sole and separate use, under a mutual agreement between them that it was to be her separate property, because the status of the property as separate or community property depends upon its character at the incipiency of the title. Creamer v. Briscoe, 101 Texas, 490; Welder v. Lambert, 91 Texas, 510; Alford Bros. & Whiteside v. Williams, 41 Texas Civ. App., 436; Presidio Mining Co. v. Bullis, 68 Texas, 581.

*Graham B. Smedley,* for defendant in error.—When a married woman purchases from the State public school land on condition of settlement, and she and her husband execute their joint obligations to the State for thirty-nine-fortieths of the purchase money, and she and her husband make the settlement and live upon the land until the completion of the three years occupancy, but she pays the first one-fortieth cash payment to the State, and the annual interest payments to the State, and the taxes, until the completion of the occupancy out of money given her, the land is community property, and the wife is the creditor of the community to the extent of the amount of said payments so made by her. Creamer v. Briscoe, 101 Texas, 490; Good v. Terrell, 100 Texas,

275; Pohle v. Robison, 102 Texas, 274; Mills v. Brown, 69 Texas, 244; Leaverton v. Robison, 102 Texas, 516; Brown v. Robison, 131 S. W., 401; Allen v. Allen, 101 Texas, 362; Miller v. Odom, 152 S. W., 1185.

MR. JUSTICE HAWKINS delivered the opinion of the court.

Continuously since prior to May 28, 1906, Mrs. M. E. Skeen and J. C. Skeen have been and are 'husband and wife, and during all of that time he has been and is an invalid, and unable to contribute to the support of himself and his family, and they have been supported by her. G. T. McClintic is a brother-in-law of J. C. Skeen, and is the father of C. A. McClintic.

Section 10 in block 42, township 5 S., certificate No. 4193, issued to the Texas & Pacific Railway Company, was State school land, lying in Upton County, and was sold by the State on March 23, 1906, to Hardin, who settled 'upon and occupied it. G. T. McClintic proposed to Mrs. M. E. Skeen that if she would purchase section 10 from Hardin, and reside on it, for herself and children, he, McClintic, would bear all the expense of so doing, and would furnish her with the money to pay it out. She and her husband and G. T. McClintic had an understanding to that effect, pursuant to which she bought section 10, which was conveyed to her by Hardin on May 28, 1906, in payment for which she gave to Hardin two horses, of .the value of $100, which had been given to her for the benefit of herself and her children, her unsecured note for $100 in favor of said Hardin, and $100 in money which she had borrowed from Henry McClintic on her unsecured note, neither of which was signed by J. C. Skeen, both of which notes she duly paid with money given to her by G. T. McClintic for that purpose. Thereupon Mrs. M. E. Skeen and J. C. Skeen jointly executed their substitute obligation to the State for the unpaid balance of purchase money on section 10, and made actual settlement thereon. They afterward performed the balance of the obligations of Hardin, the original purchaser thereof, to the State, relative to occupancy and improvement, and on July 22, 1909, Mrs. M. E. Skeen made proof of occupancy of section 10. The land in controversy, section 44, in block 42, township 4 S., certificate No. 4186, issued to the Texas & Pacific Railway Company, was also State school land, lying in Upton County, which was attached to Midland County for judicial purposes. G. T. McClintic likewise proposed to Mrs. M. E. Skeen that, if she would file on said section 44 for the benefit of herself and her children, he would furnish her with the money to cover all expenses and pay it out. Mrs. M. E. Skeen and J. C. Skeen had with G. T. McClintic an understanding that he was to furnish money to cover all expenses and pay section 44 out, and the wife and husband had an understanding between themselves that the land should belong to her individually and to her children. Thereafter, on August 1, 1906, section 44 was purchased from the State in the name of Mrs. M. E. Skeen, as "additional land" to section 10, for $979.20, the first payment being $24.48, and the obligation to the State for $954.72, balance of purchase money thereon, being executed by her and by her husband jointly. Pursuant to said understanding G. T.

McClintic furnished to Mrs. M. E. Skeen money with which to make said first payment and interest payments, and to pay all taxes on section 44, the amount so paid by McClintic thereon aggregating $126.76. On August 17, 1909, Mrs. M. E. Skeen, joined by her husband, conveyed said sections 10 and 44 to C. A. McClintic. On April 10, 1908, in the County Court of Midland County, Whitefield and his associates, composing a partnership firm known as Midland Grocery & Dry Goods Company, recovered against J. C. Skeen a judgment for $354.62, besides interest and costs, and on April 17, 1908, filed an abstract thereof in the office of the county clerk of Midland County, and on March 1, 1910, in the District Court of Midland County, recovered against C. A. McClintic a judgment foreclosing upon said section 44 a lien under said abstract of judgment. Said judgment of foreclosure provided that said section 44 should be sold as under execution, and that out of the proceeds $126.76, which was the amount of the first payment to the State, interest, and taxes so paid on said section by Mrs. M. E. Skeen, should be first paid to her before payment to Whitefield and his associates of the amount due them under said judgment.

The sole question presented for our determination is: Was said section 44 community property of Mrs. M. E. Skeen and her husband, or was it her separate property? If it was community property, it passed by said deed of August 17, 1909, to C. A. McClintic, subject to the lien of said judgment against J. C. Skeen, and in that event said judgment against McClintic foreclosing said lien should be upheld and enforced; but not so if it was the separate property of Mrs. M. E. Skeen.

Our statutes relating to property rights of husband and wife contain the following provisions:

"Article 4621. All property, both real and personal, of the husband, owned or claimed by him before marriage, that acquired afterward by gift, devise or descent, as also the increase of all lands thus acquired, shall be his separate property. All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, as also the increase of all lands thus acquired, shall be the separate property of the wife; but during the marriage the husband shall have the sole management of all such property.

"Article 4622. All property acquired by either husband or wife during marriage, except that which is acquired by gift, devise or descent, shall be deemed the common property of the husband and wife, and during the coverture may be disposed of by the husband only."

"Article 4624. The wife may contract debts for necessaries furnished herself or children, and for all expenses which may have been incurred by the wife for the benefit of her separate property; and for such debts suit may be brought in the manner prescribed in article 1840."

"Article 4627. The community property of the husband and wife shall be liable for their debts contracted during marriage, except in such cases as are specially excepted by law."

In a controversy like this, to which the State is not a party, involv-

ing an issue as to whether public land purchased from the State in the name of either husband or wife is community property or separate property, the status of the property must be determined by the character of the right by which the title thereto had its inception. Such, it seems, was the rule under the Spanish law; such has been the rule under the Revised Civil Code of Louisiana, in which State the community system prevails; and such is the rule under the statutes and decisions of this State. Welder v. Lambert, 91 Texas, 510, 44 S. W., 281; Sparks v. Taylor, 99 Texas, 411, 90 S. W., 485, 6 L. R. A. (N. S.), 381; Creamer v. Briscoe, 101 Texas, 490, 109 S. W., 911; 17 L. R. A. (N. S.), 154, 130 Am. St. Rep., 869; Ullmann v. Jasper, 70 Texas, 446, 7 S. W., 763; Manchaca v. Field, 62 Texas, 135; Mills v. Brown, 69 Texas, 244, 6 S. W., 612; Alford Bros. & Whiteside v. Williams, 41 Texas Civ. App., 436, 91 S. W., 636; Allen v. Allen, 101 Texas, 362, 107 S. W., 528; Miller v. Odom (Civ. App.), 152 S. W., 1185.

It is well settled that a married woman may, with her husband's consent, purchase public school land from the State, and that such land so purchased in the name of either husband or wife while they are living together is prima facie community property. Neighbors v. Anderson, 94 Texas, 487, 61 S. W., 145, 62 S. W., 417; Leaverton v. Robison, 102 Texas, 516, 120 S. W., 169. Section 44 was acquired by purchase during the marriage of this husband and wife, and thus, under the statute and the decision construing it as applied to public school as well as to other lands, became prima facie community property. But in all such cases the presumption that the land is community property may be overcome by proof that, as between husband and wife, such land is the separate property of one or the other. The rule applicable in this case is well stated in Texarkana National Bank v. Hall (Civ. App.), 30 S. W., 73, thus: "Where lands acquired by onerous title during the existence of the marital relation are conveyed by deed to the wife, in the absence of recitals in the deed to the contrary, it will be presumed that the property was purchased with community funds, and that it was intended to be held as community property. This presumption may be overcome by proof that the property was purchased with the separate estate of the wife, or that it was the intention of the husband in causing the deed to be made to her to make it her separate property"—citing Higgins v. Johnson, 20 Texas, 389, 70 Am. Dec., 394; Morrison v. Clark, 55 Texas, 443; Presidio Mining Co. v. Bullis, 68 Texas, 587, 4 S. W., 860; Spencer v. Rosenthall, 58 Texas, 6; Parker v. Coop, 60 Texas, 114; Purinton v. Davis, 66 Texas, 456, 1 S. W., 343.

Execution by the husband of notes for balance of purchase money for land conveyed to the wife does not constitute such land community property. In various cases in which the first payment for land deeded to the wife has been made with her separate funds, and notes for deferred payments have been executed by the husband, with the understanding between them that they were to be paid out of the wife's separate estate, the land has been held to be her separate property. Such

were the facts in Parker v. Fogarty, 4 Texas Civ. App., 615, 23 S. W., 700, in which the distinguished former Chief Justice Lightfoot of the Court of Civil Appeals for the Fifth Supreme Judicial District, after a careful review of numerous decisions involving that question, said: "The right of a married woman to buy property for part cash and part notes, where the payments are to be made out of her separate estate, is now too firmly established to be called in question"—citing Ullmann v. Jasper, 70 Texas, 447, 7 S. W., 763; McBride v. Banguss, 65 Texas, 174; Matlock v. Glover, 63 Texas, 239; Schuster v. Jewelry Co., 79 Texas, 179, 15. S. W., 259, 23 Am. St. Rep., 327; Evans v. Welborn, 74 Texas, 530, 12 S. W., 230, 15 Am. St. Rep., 858.  Subsequently, in Sparks v. Taylor, supra, this court, after reviewing various decisions upon the question, including the Parker Case, supra, said, in overruling the contention that, because the husband joined the wife in signing a note secured by a lien on her separate property, the money borrowed thereon was community property: "It is evident that this contention is not sustained by the decisions of this court, for in every case cited above the husband signed the notes for deferred payments, and the court held in each case that the fact of agreement that the notes should be paid by the separate funds of the wife fixed upon the land purchased the character of separate property; the controlling facts being the intention of the parties and the investment of the wife's separate funds."

Over against said presumption that said section 44 is community property are these "controlling facts": (1)  Section 44 was so purchased in the name of the wife, and the husband joined her in executing the obligation to the State for deferred payments thereon, all pursuant to said agreement between them that the land should belong to her. (2)  The only money which went into section 44 was the $126.76 which was applied to first payment, interest, and taxes, and every cent of it was the wife's separate property by gift from G. T. McClintic, made for that specific purpose, pursuant to said tripartite agreement that said donor would give to the wife money to cover all expenses and pay the land out.  Both husband and wife expected that deferred payments, interest, and taxes on section 44 would be met by the wife by means of gifts from G. T. McClintic to her.  The only reasonable expectation or hope that the wife or the husband or G. T. McClintic could have had that she or the husband, or both, would be able to finish paying for the land was that said McClintic would give her sufficient money for that purpose, just as he had promised them he would do, and just as he did, with regard to section 10.

Our conclusion is that, under the facts of this case, section 44 was the separate property of Mrs. M. E. Skeen, and that said judgment creditors of J. C. Skeen acquired no lien upon said land by virtue of said abstract of judgment.

It is ordered that the judgment of the District Court and that of the Court of Civil Appeals be reversed, and that judgment be here entered for the plaintiff in error.

*Reversed and rendered.*