**MacRAE et al. v. MacRAE et al.**

**No. 3950.**

Court of Civil Appeals of Texas. El Paso.

May 30, 1940.

Rehearing Denied Oct. 31, 1940.

John J. McCullough, of Phœnix, Ariz., and Stubbeman, McRae & Sealy, of Midland, for appellants.

Moore & Romley, of Phœnix, Ariz., and W. A. Hadden, of Fort Stockton, for appellees.

PRICE, Chief Justice.

This suit was instituted in the 112th District Court exercising jurisdiction in Pecos County by Lillian Long MacRae in statutory form of trespass to try title to recover Survey 14, Block No. 9, H. & G. N. Ry. Co. Survey, Pecos County, containing 645.41 acres, from Katherine V. MacRae and others. Katherine V. MacRae was the only answering defendant; her pleading was not guilty, and the assertion of an equitable title to the land under an alleged parol sale and parol trust. By cross action she sought to recover an undivided one-half interest in the land, asserting that same was the community property of herself and Thomas MacRae, deceased. The case was tried before the court without a jury; judgment by default was rendered against all defendants except Katherine V. MacRae. Plaintiff Lillian Long MacRae was awarded an undivided one-half interest in the property, and defendant Katherine V. MacRae was likewise awarded an undivided one-half interest.

The parties will be here designated as they were in the trial court.

Plaintiff and defendant have each perfected an appeal from the decree rendered.

The land involved is State Public School Land, same having been sold without condition of settlement. In the year 1917 Thomas MacRae made application to purchase the land, and same was awarded

to him; he paid one-fortieth of the purchase price in cash and executed obligations for the balance. At the time of this purchase the said MacRae was an unmarried man. In March, 1920, Thomas MacRae and defendant were married. In 1930 this marriage was terminated by a divorce; in the decree dissolving the marriage there was no settlement of property rights between the parties. Early in 1937 Thomas MacRae married the plaintiff. This marriage was terminated by his death in October, 1937.

On September 28, 1922, during the existence of the marriage between defendant and Thomas MacRae, they joined in a quitclaim deed purporting to quitclaim the property in controversy to John H. Betts. On December 17, 1928, John H. Betts filed in the office of the County Clerk of Pecos County an affidavit in which he, in effect, disclaimed any interest in the land, stating in substance that it was never the intention to convey to him any title to the land in controversy.

On September 24, 1925, the Acting Land Commissioner of the Land Office forfeited the sale of said section of land in controversy for non-payment of interest. On January 27, 1928, the land in question was awarded to Thomas MacRae by the Commissioner of the General Land Office at a new price of $5 per acre (the 1917 award having been at $3.56⅔ per acre).

Thomas MacRae, a few days prior to his death, executed a deed purporting to convey the land in controversy to plaintiff, his then wife; the deed recited a consideration of ten dollars.

The trial court found against defendant on her claim of an equitable title to the entire land, but held that the property was community property of defendant and deceased Thomas MacRae.

Plaintiff's claim for the entire property was based on the theory that same was at all times the separate property of her deceased husband, and that the deed to her from him before mentioned invested her with full title to the property.

It will aid in the proper disposition of this case if it be first determined whether the property in controversy was the separate property of Thomas MacRae or a part of the community estate of said MacRae and the defendant, his first wife.

Had the purchase of 1917 been consummated in accordance with the terms, it is clear and well established by legal precedent that same would have been his separate property. However, the fact that the forfeiture occurring in 1925 and the repurchase in 1928, at a time when the marriage subsisted, raises a serious question as to whether this property, after the second purchase, became a part of the community or remained his separate property.

Under the law existing at the time of the purchase in 1917, in case of forfeiture for failure to make the payments required in the obligations, at any time before a sale to another party he had the right to pay up all arrearages and have the purchase reinstated. Art. 5326, R.S.1925.

In 1925 it was provided, Chap. 94, p. 267, of the Acts of that year, that in case the land theretofore purchased from the State, and which had been forfeited for non-payment of interest and had not been resold, that the owner of said land at the date of the forfeiture should have the right, for a period of ninety days after the date of the notice of revaluation of his land, to repurchase upon the terms and conditions prescribed in the Act. In substance the Act further provided that the former owner, within sixty days after the date the list of forfeited lands was forwarded to the Clerk of the County, might have same revalued by paying a fee of one cent per acre, and thereafter, if he desired, might make application to purchase the land on the new valuation. This Act was amended in the First Called Session of the Thirty-Ninth Legislature, 1926, c. 25, Vernon's Ann.Civ. St. art. 5326a. It provided that after forfeiture the former owner should have the right, for a period of ninety days after the date of notice of revaluation of such land, to purchase same; if the owner should not exercise the right of repurchase given by the Act, that the Commissioner should then place the land on the market for sale in the manner that was then or might thereafter be provided by law for the sale of forfeited Public School Lands. Art. 5326a, Vernon's Ann.Civ.St.

In Art. 4613, R.S.1925, it is provided: "All property of the husband, both real and personal, owned or claimed by him before marriage, and that acquired afterwards by gift, devise, or descent, * * * shall be his separate property."

In Art. 4619, it is provided: "All property acquired by either the husband or

wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife."

In Speer, Law of Marital Rights in Texas, Third Edition, Sec. 380, it is said:

"The status of property acquired during the marriage is determined by the inception of the title. More accurately speaking, the property is acquired when the title had its inception.

"This is true because when the title has its inception, a right accrues and this right is property and gives character to its status. Equities may of course arise, but this is another consideration.

"When the right to the property originates before the marriage or after its dissolution, it is not community."

In the case of McClintic v. Midland Grocery & Dry Goods Company, 106 Tex. 32, loc. cit. page 35, 154 S.W. 1157; loc. cit. page 1158, it is said: "In a controversy like this, to which the state is not a party, involving an issue as to whether public land purchased from the state in the name of either husband or wife is community property or separate property, the status of the property must be determined by the character of the right by which the title thereto had its inception." Numerous authorities are cited in support of this proposition.

In the case of Barbet v. Langlois, 5 La. Ann. 212, it is held: If the cause of the acquisition may be fairly considered as having preceded the marriage, the property is separate property, although the title was conveyed subsequent to the marriage. This case has been several times cited by our Supreme Court with approval. Briefly stated, the facts in the case were that before marriage the husband owned land fronting on the Bay. Thereafter the United States gave a preference right to such owners to purchase additional lands abutting on the rear of such property. This right the husband exercised subsequent to the marriage, and perhaps paid for same out of community funds. However, it was held that the property so acquired was his separate property.

The case of Welder v. Lambert, 91 Tex. 510, 44 S.W. 281, has important bearing here. In that case the contract by which the land was acquired was before marriage; it was performed in part before and in part after marriage. Title was granted after the death of the husband. The property was held to be the separate property of the husband. This case reviews and discusses a number of the cases having bearing in the instant case, among others, the case of Barbet v. Langlois, supra.

We deem the case of Stiles et al. v. Hawkins, Tex.Com.App., 207 S.W. 89, as having direct bearing on the question tendered in this case. The facts were that J. T. Rawls and W. W. Rawls settled on lands within the Mississippi & Pacific Railroad Reserve under an Act of the Legislature of August 26, 1856. A right to purchase at fifty cents per acre was given such settlers. The Rawlses had surveys made but never completed the purchase, and subsequent to the survey sold to Stiles, an unmarried man. Stiles married on the 25th day of November, 1858. On September 13, 1859, he paid the sum of fifty cents per acre on one of the surveys and received a patent; on November 23, 1859, he paid out the other survey and received a patent. These payments were made out of the community funds. The land was held to be the separate property of Stiles. The opinion of the Court of Civil Appeals in the case is reported under the style of Hawkins v. Stiles, 158 S.W. 1011. Four opinions were written in the Court of Civil Appeals, Judge Rice writing the opinion for the majority, with Chief Justice Key dissenting; on rehearing Judge Jenkins wrote the opinion for the majority. Chief Justice Key filed another dissenting opinion on rehearing. The majority opinion held that the property was the community property of Stiles and wife; the dissenting opinion contended that the property, under the facts, was the separate property of Stiles. The majority opinions and the dissenting opinions carefully and forcefully discuss the prior decisions of the courts having bearing on the question involved. The discussions as to the principle involved and the cases applicable are clear, lucid and thorough. We deduce from this authority, and other authorities applicable, the principle that the inception of the title to public land is the initial step essential under the law to the initiation of the right to acquire the title.

Determinative of the question here is the nature and extent of the right as to the land involved of Dr. MacRae after the forfeiture of the land in September, 1925. We think, briefly, under Arts. 5326 and 5326a, he had within the time limited by

those articles. a right to have the land reappraised and after such appraisal for ninety days the exclusive right to purchase same at the appraised value. This right was in the nature of an option. It is clear this right was not a title. Save as above stated, his right in and to the land was terminated by such forfeiture. Boykin v. Southwest Texas Oil & Gas Co., Tex.Com. App., 256 S.W. 581.

In the majority opinion in the Court of Civil Appeals in Hawkins v. Stiles, supra, it was vigorously asserted that the acquiring of a mere preference right to purchase by a single man was not the inception of the title. In the course of his dissenting opinion Chief Justice Key said [158 S.W. 1017]: "It is believed to be a sound proposition of law, well settled in this state by judicial determination, that whenever such steps have been taken as will secure to a particular person the exclusive right as against all other persons, except the state, to a particular tract of public land, then the person to whom such right has been secured has at least an equitable title to such land, which title may subsequently be perfected by performance of such additional act as may be necessary to obtain the legal title from the state."

■ Under the evidence, but for the purchase of 1917 Dr. MacRae would not have had the preference right to purchase in January, 1928. The land in controversy was acquired by and through the exercise of this preference right. In our opinion, the inception of the title here involved was in the purchase of 1917. It follows that even after the repurchase of 1928 the land remained the separate property of Dr. MacRae. If community funds were used in its reacquisition, beyond question there is, or at least was, in any event, a right to reimbursement.

■ Defendant in her appeal, as a basis for the claim of title to the entire property involved, presents the contention that she is vested with the equitable title thereto. In substance it is contended that her husband agreed with her that in consideration of certain property which she caused to be conveyed to him, he should convey the property involved herein to her, and she made the conveyances of the property in accordance with the agreement. Further, in lieu of a conveyance to her by her husband, the property was conveyed to John Betts by their joint deed to be held in trust for her, if not exchanged

for other property, the title to which was to be taken in her name.

We have before mentioned that the record shows a quitclaim deed from defendant and her husband to John H. Betts, Jr. It is conceded by all parties that under this deed Betts did not acquire a beneficial title to the property.

Defendant, in substance, sustained the theory relied upon by her own testimony. Aside from her testimony there was no evidence sustaining this issue. Defendant may or may not have had interest in the Bowie County lands. If she had such interest, it was not an interest appearing of record—at least there is nothing in the statement of facts aside from her testimony to show interest in the Bowie County property.

In its judgment the trial court found: "That with respect to the equitable title asserted by defendant Katherine V. MacRae to all the land below described, in her answer to plaintiff's petition, the evidence adduced is insufficient to establish such equitable title, and in view of such evidence and the law applicable, the prayer of such defendant for title and possession of all the land below described is accordingly denied."

Defendant was an interested witness and a question of fact was raised on her testimony, even though same was undisputed. It does not appear from the record that plaintiff had means readily available to contradict such testimony, if same did not represent the facts. It does not appear as to whether Betts, the grantee in the quitclaim deed, was available or otherwise. Dr. MacRae was dead. In our opinion the question of fact was one to be passed upon by the trial judge. Under his finding the evidence was deemed insufficient to support the trust claimed by defendant. This finding is final upon the matter. If there be left out of consideration the testimony that at the time of the conveyance to Betts it was agreed by the parties that he should hold same in trust for defendant, we hold that the statute of frauds would debar defendant from relief.

It is ordered that the judgment of the trial court in favor of the defendant for an undivided one-half interest in the property in question be reversed and here rendered in favor of the plaintiff, and that plaintiff recover of and from defendant all right, title and interest in and to the

property involved, and that defendant take nothing by her cross action.

As so reformed and modified the judgment is affirmed.

### On Rehearing.

■ On motion for rehearing defendants urge with great force that the statement of facts herein fails to show any application for reappraisement of the land of Dr. MacRae. This is correct. When the land was reappraised at $5 per acre does not appear. Beyond all cavil of a doubt, reappraisement there was. The land on the original sale was appraised at $3.-56⅔ per acre.

On the forfeiture of the MacRae original purchase on September 22, 1925, notice thereof was given to the County Clerk of Pecos County, which was dated September 24, 1925, and filed September 26, 1925. MacRae, so far as the record goes, did not request a reappraisement within sixty days from the notice of forfeiture.

On January 6, 1928, MacRae made application to repurchase at a valuation of $5 per acre. There is no evidence that during the period from the forfeiture and the said application the State sold the land to any other purchaser. We think it clear and undisputed that there was no other sale. Chapter 94, p. 267, of the Acts of 1925 was amended, First Called Session of the Legislature, 1926, Chapter 25, p. 43. It is now Article 5326a, Vernon's Ann.Civ. Statutes. Section 2 of said amended Act provides for including in the list of forfeited lands, lands theretofore forfeited and unsold.

On January 6, 1928, the Commissioner of the General Land Office gave notice that the land in controversy had been forfeited prior to January 7, 1927, and was unsold, and might be repurchased if an application for revaluation were made by the former owner within sixty days from the date of the notice.

On January 6, 1928, MacRae made application to repurchase at $5 per acre. As stated, when this valuation was made does not appear from the record. The application was to repurchase. Unless there was a reappraisement of the land the Commissioner was without authority to accord the preference right to purchase. A preference right was unquestionably given. We think the record forces the conclusion that MacRae did apply for reappraisement of the land and same was

forthwith made at $5 per acre. The land was awarded January 27, 1928, the endorsement of the Land Office on the application shows the land was appraised at $5 per acre. The law giving the right to apply for the reappraisement does not specify that such application be in writing.

The action of the Land Commissioner in awarding the land on the application to repurchase, in the absence of a showing to the contrary, justifies the presumption that such application for appraisement was made. Gulf Production Co. v. State, Tex. Civ.App., 231 S.W. 124.

■ If irregularities there were in the manner of the repurchase of this land, which we do not hold, it cannot affect the main and serious question in this case. It clearly appears that it was a repurchase as provided for in Article 5326a. This right had its inception in the prior purchase when Dr. MacRae was unmarried. Title was acquired by the exercise of this right.

Had Dr. MacRae elected to reinstate his forfeited purchase by payment of the arrearages, there can be little question here. Judkins v. Robison, 109 Tex. 6, 160 S.W. 955; Gulf Production Co. v. State, Tex.Civ.App., 231 S.W. 124.

The amendment to Article 5326, R.S. 1925, gives a right additional to that of reinstatement. Magnolia Petroleum Co. v. Walker, 125 Tex. 430, 83 S.W.2d 929.

In case of forfeiture this right of reinstatement existed from the date of the purchase. This qualification must be made, that in case of a valid sale to another, the right was extinguished. Conceded, it must be, that the right to repurchase as distinguished from reinstatement had its inception in the Act of 1925 and the amendment thereto of 1926. The amendments to 5326, R.S.1925, of 1925 and 1926, were the inception of the right to repurchase. At the time of the passage of these amendments Dr. MacRae and defendant were married, and were husband and wife on the date of the repurchase. But, as stated in Magnolia Petroleum Co. v. Walker, supra, the right to repurchase was only an alternative to the existent right of reinstatement. The right of reinstatement existed to the date of the application to repurchase. This right of repurchase or reinstatement was not a title. Houston Oil Co. of Texas v. Reese-Corriher Lumber Co., Tex.Civ.App., 181 S.W. 745, writ refused.

But we think it had its inception in the original purchase. The title acquired by the repurchase was acquired by the exercise of this right.

Motion is overruled.