**McFADDIN v. COMMISSIONER OF IN-TERNAL REVENUE (three cases).**

**WARD v. COMMISSIONER OF INTER-NAL REVENUE.**

No. 11064.

Circuit Court of Appeals, Fifth Circuit.

April 14, 1945.

J. M. Combs, of Beaumont, Tex., and Percy W. Phillips, of Washington, D. C., for the taxpayers.

Hilbert P. Zarky, Sewall Key, Robert N. Anderson, and Robert Koerner, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Charles E. Lowery, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Taxpayers, married persons living in Texas, beneficiaries of the McFaddin trust, a trust of Texas property established and managed in Texas, returned as community all the income they had received from the trust in the tax years in question, 1938 and 1939. Disagreeing with the taxpayers in respect of several matters, including (1) their claim that all of the income from the trust was community property, and (2) that profits from the sale of an addition known as Central Gardens should be returned not as ordinary income but as capital gains, and if not, should be returned as community, the commissioner determined deficiencies accordingly. The Tax Court agreed with the commissioner on these two matters and with taxpayers on the others, and redetermined the deficiencies accordingly. Taxpayers are here seeking relief from the findings and order.

■ The issue of whether the profits from Central Gardens are returnable as ordinary income or as capital gains may be shortly disposed of by saying that the decisions [1] have settled it that property, subdivided and sold as Central Gardens was

here, is regarded as sold in the business of the taxpayer and the profits from such operations are regarded as ordinary income.

■ As to the alternative claim that if these profits are to be regarded as profits of a business and, therefore as ordinary income, the income must then be regarded as community, we think it sufficient to say, that while a case might arise where the character and extent of the community efforts and outlays were such that the profits from the subdivisional sale of separate real estate might be properly regarded as something other than the mere proceeds of the sale of separate property, and therefore, community property, the evidence makes out no such case here. All that appears is that the property was subdivided into an addition and sold by the agent, who having an exclusive agency for, and being in entire charge of, the sales, did all advertising at his own expense and was paid a commission of 25 per cent on all sales. Neither the trustees nor any of the taxpayers had anything to do with the management of the property except that the trustees contributed some moneys to lay out the property and grade the streets. Under these circumstances to say that the profits were "obtained * * * by the toil, talent, thrift, energy, industry or other productive faculty" [2] of a member of the marital community so as to convert into community the profits of the sale of separate property would be to run a good and sound theory into the ground.

The main question, whether the evidence offered by the taxpayers was sufficient to overthrow the commissioner's determination that the income taxed to them as profits of separate property was in law and in fact separate, requires more ample treatment. Here, as in the Tax Court, taxpayers insist that all the income in question was community, because all the properties of the trust were beneficially owned not by their separate but by their community estates. [3] Here, as in the Tax Court, tax-

1 Commissioner of Internal Revenue v. Boeing, 9 Cir., 106 F.2d 305; Welch v. Solomon, 9 Cir., 99 F.2d 41; Ehrman v. Commissioner of Internal Revenue, 9 Cir., 120 F.2d 607.

2 Logan v. Logan, Tex.Civ.App., 112 S.W.2d 515.

3 Pointing to the evidence that: the trust was of income producing properties, as originally conveyed including two cattle ranches of 84,000 and 16,000 acres, respectively, on which the trustees conducted a cattle business with a normal number of cattle from 7500 to 8600; farms on which truck and grains were raised for feeding the cattle; rental property, including a rice farm, rice mill, a warehouse, hotels, office buildings and miscellaneous properties; that part of the lands were leased for rat trapping operations; that there were large sales of cattle throughout the years; and

payers insist in the alternative that if all was not community property, that part of it was which came from property acquired by the trustees with funds in part community and in part separate but so inextricably confused and commingled as that under Article 4619 of the Texas Statutes,[4] they and the property purchased with them must be deemed to be community property.[5]

A subordinate contention of the Taxpayers is that the commissioner, having segregated the gross income from the property into that which he held to be community and that which he held to be separate, wrongly allocated all charges against the gross income to the part of the income which he had determined to be community and none of them against that part which he treated as separate income.

The Tax Court, in an opinion [6] fully setting out the facts as to the creation and operation of the trust, rejected the taxpayers' first contention that the beneficiaries acquired their interest in the trust by onerous title. It found to the contrary that the trust was created by the father of the beneficiaries, joined by his wife, with a specific donative intent toward his children, and that their interest in all of the property originally granted in trust was their sep-arate property acquired, within the constitutional definition, by gift. The taxpayers' alternative contention, that part of the income was community because from property acquired afterward by the trustees by the use of commingled funds, was disposed of by the Tax Court upon the ground that the rights of the beneficiaries did not attach to the gross income but only to the distributable net, and that the gross income the trustees had used to purchase additions to the trust was not, and could not be, community income. The subordinate point, allocation of all charges to community income was disposed of by the Tax Court upon the ground that the evidence of the taxpayers had failed to show that the commissioner's allocations were wrong.

 We agree with the Tax Court that the facts that the lands were conveyed to the trust subject to named debts and liens and that the trust was charged with the payments to Mrs. McFaddin are without effect to overcome the clearly manifested donative intent of the settlors so as to convert what would otherwise be a gift of separate property into a conveyance upon onerous consideration of community property.[7] We, therefore, agree with its conclusion that the oil royalties and bo-

---

large income from rents; all of which, except the net profits which under the trust were paid over to the beneficiaries, were plowed back into the property by the payment of debts and charges on it and the purchase of new properties, including lands from which some of the oil income came; that the properties were conveyed subject to the payment of debts of the grantors of approximately $488,000, and subject to an annual payment to Mrs. McFaddin of $30,000 a year payable from income or, if insufficient, from the corpus; the argument on this contention is that, under the law and the facts, the property as originally conveyed, and as added to, must be held to have come to them by onerous title and as community property and not by gift as separate property.

[4] "Art. 4619. 4622-3 Community property

"Sec. 1. All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife; and all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, un-less the contrary be satisfactorily proved." Vernon's Texas Civil Statutes.

[5] Pointing to the facts: that throughout the ten years of the operation of the trust before the tax years in question, large sums of money from rents, cattle operations, sales of properties, and royalties, had been received in and disbursed from a common bank account by the trustees without distinction between the receipts such as rents, dividends, interest or profits from the operation of a business, and income such as gain from the sale of capital assets or from oil royalties; that from this same bank account all operating expenses were paid, all indebtednesses discharged, new purchases of cattle and additional lands made; taxpayers insisted below and insist here that if oil income from the originally conveyed lands is and should be treated as separate property, oil income from the subsequently acquired lands may not be.

[6] 2 T.C. 395.

[7] McClintic v. Midland, 106 Tex. 32, 154 S.W. 1157; Connor v. Boyd, Tex. Civ.App., 176 S.W.2d 212; Jenkins v. Robinson, Tex.Civ.App., 169 S.W.2d 250; John Hancock Mutual Life Ins. Co. v. Bennett, 133 Tex. 450; 128 S.W.2d 791.

nuses derived from, and the profits from sales of, the properties originally conveyed in trust to the separate beneficial interests of the taxpayers came to them as separate property and are taxable as separate income.[8]

Upon the taxpayers' alternative contention, however, that part of the sums taxed to it as separate income were derived from property acquired by the trust in such manner as to make it their community property, the matter stands quite differently. The theory of the Tax Court that none of the commingled property with which the after-acquired property was purchased was community property because, under the terms of the trust instrument, gross income was treated as corpus, the rights of the beneficiaries did not attach to gross income but only to the distributable net income, and the gross income used by the trustees was, therefore, not community property, will not at all do. The taxpayers were the beneficial owners of the trust properties, and every part and parcel of them, including income from them, belonged beneficially to them, either as separate or as community property, in the same way that it would have belonged to them had the property been deeded to the taxpayers and operated by themselves.[9] The greater part of the normal income from the property during the years preceding the tax years in question was community income. When it was commingled in a common bank account with other funds of the trust so that the constituents had lost their identity, the whole fund became community;[10] and when it was used by the trustees to purchase additional properties, those properties, taking the character of the funds which bought them, were community property.[11]

But, says the commissioner, if it be conceded, contrary to the view of the Tax Court, that undistributable trust income is to be regarded as community, and the community and separate property which went into the acquisition of the additional property were so unidentifiably commingled as that under Texas law, the whole commingled fund would, because of Article 4619, supra, and the prevailing presumption in favor of the community,[12] be regarded as community property, still the taxpayer cannot prevail because the presumption is not substantive but procedural and is overcome by the commissioner's finding that the property was separate.[13]

We do not think so. In Howard v. United States, 5 Cir., 125 F.2d 986, 994, this court had occasion to consider the disputable presumption in favor of the community created by Articles 2402 and 2405 of the Civil Code of Louisiana, similar in purpose to the Texas Article 4619. Saying: "* * * since the ultimate tax question here depends upon the ownership of the funds on deposit, and since the law of Louisiana is controlling, the disputable presumptions above mentioned are so bound together with local property rights that the failure to apply them would result in serious interference with the local substantive law"—we there gave full effect to the statutory presumption; while in Stewart v. Commissioner of Internal Revenue, 5 Cir., 95 F.2d 821, a Texas income tax case, this court gave like effect to Article 4619 of the Texas Statutes.

Finally, the commissioner urges upon us here, that because these trusts were spendthrift trusts, they were in effect conveyances of income to the separate use of the beneficiaries. Putting to one side that, as to the tax years in question, the

8 Stephens v. Stephens, Tex.Civ.App., 292 S.W. 290; MacRae v. MacRae, Tex. Civ.App., 144 S.W.2d 320; Commissioner of Internal Revenue v. Skaggs, 5 Cir., 122 F.2d 721; Commissioner of Internal Revenue v. Wilson, 5 Cir., 76 F.2d 766; Commissioner of Internal Revenue v. Terry, 5 Cir., 69 F.2d 969.

9 Commissioner of Internal Revenue v. Wilson, supra, Commissioner of Internal Revenue v. Terry, supra, and Com'r v. Porter and Lightner, 5 Cir., 148 F.2d 566.

10 Saylor v. Saylor, Tex.Civ.App., 20 S.W.2d 229; Smith v. Buss, 135 Tex. 566, 144 S.W.2d 529.

11 Taylor v. Suloch Oil Co., Tex.Civ. App., 141 S.W.2d 657; John Hancock Mut. Life v. Bennett, Tex.Civ.App., 159 S.W.2d 892; John Hancock Life v. Bennett, 133 Tex. 450, 128 S.W.2d 791; Miller v. Miller, Tex.Civ.App., 131 S.W.2d 245; Gleich v. Bongio, 128 Tex. 606, 99 S. W.2d 881.

12 Hardee v. Vincent, 136 Tex. 99, 147 S.W.2d 1072; Langehennig v. Hohmann, 139 Tex. 452, 163 S.W.2d 402; Price v. Service Bureau, Tex.Civ.App., 165 S.W. 2d 794.

13 Shea v. Commissioner of Internal Revenue, 9 Cir., 81 F.2d 937.

574

spendthrift provisions were not valid[14] because the trust was continued and in effect created by the beneficiaries themselves, and assuming that these provisions remained valid, it is sufficient to say that, in the Porter and Lightner cases, we considered and disposed adversely to the commissioner of the same contention.

■ The Tax Court was wrong in sustaining the commissioner's determination that all the income in question was separate income throughout. It was wrong too in sustaining the commissioner's allocation of all the charges against community income. Because of these errors, while we agree with its finding on the other matters appealed from and the redetermination is affirmed as to them, as to the matters in which we have found error, the cause will be remanded to the Tax Court with directions to determine how much of the claimed separate income came from the original and how much from the after acquired property, and also the proper apportionment as between separate and community property of the charges and expenses attributable to them, and to redetermine the deficiencies accordingly.

---

[14] Griswold Spendthrift Trusts, Sec. 474; Bogert Trusts, Sec. 224.